Filed 7/23/14  City-Wide Electronic Systems v. Ursus Real Estate CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CITY-WIDE ELECTRONIC SYSTEMS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> URSUS REAL ESTATE, INC., <br><br> Defendant and Appellant. | D065612 <br><br><br> (Super. Ct. Nos. RIC490984, RIC496163) |

APPEAL from a judgment of the Superior Court of Riverside County, Dallas S. Holmes, Judge.  Affirmed.

Songstad Randall Coffee & Humphrey and William D. Coffee, Janet E. Humphrey, Chris D. Greinke for Defendant and Appellant.

McDougal, Love, Eckis, Boehmer & Foley and Steven E. Boehmer, Carrie L. Mitchell for Plaintiff and Respondent.

Defendant and appellant Ursus Real Estate, Inc. (Ursus) appeals from a judgment in favor of plaintiff and respondent City-Wide Electronic Systems, Inc. (City-Wide) following a bench trial on City-Wide's claim for foreclosure of two mechanics' liens. Ursus contends the trial court erred by failing to rule that the claim was time-barred by the 90-day limitations period of Civil Code[1] section 3144 because undisputed facts showed City-Wide had actual knowledge of the identity of Ursus's predecessor, Bank of the West (Bank), as the construction lender when it filed its complaint, and these facts precluded City-Wide from properly adding Ursus and Bank as Doe defendants under the fictitious name statute (Code Civ. Proc., § 474). We affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In January 2006, RC Grading entered into a subcontract agreement with G Companies, a general contractor, for work on the Murrieta Village Walk Project, a multi-unit apartment complex located in Murrieta, California (the project). The project was originally owned by Murrieta Village Walk, L.P. (Murrieta L.P.) RC Grading commenced grading at the project on February 2, 2006.

Bank of the West (Bank) was the project's construction lender. On February 22, 2006, Bank recorded a construction deed of trust. The next day, City-Wide entered into a contract with G Companies for electrical work on the project at a contract price of

---

[1]     Statutory references are to the Civil Code unless otherwise specified. In this opinion, we refer to the provisions of the mechanics' lien law (former §§ 3082-3267, now §§ 8000-9566) in effect before July 1, 2012. (Stats. 2010, ch. 697, § 16.)

$751,542.[2]  At about that time, G Companies provided City-Wide with an information sheet identifying Bank as the construction lender.  City-Wide's employee Dawn Gandy used that information to prepare City's preliminary 20-day notice (§ 3097[3]).

In July 2006, City-Wide served the preliminary notice on Bank, Murrieta L.P., and G Companies.  The preliminary notice identified Bank as the project's construction lender.  Bank signed a certified mail return receipt in July 2006.

On December 28, 2007, City-Wide recorded a mechanics' lien in the amount of $149,917.31.  On January 22, 2008, it recorded another mechanics' lien in the amount of $96,106.07.

On March 26, 2008, City-Wide filed a complaint for breach of contract and foreclosure of its mechanics' liens against G Companies and Murrieta L.P., as well as Does 1 through 10.  G Companies and Murrieta L.P. answered the complaint in May 2008.

---

[2]     As of June 2007, the contract amount had been revised to $764,502 due to change orders.

[3]     "Service of a preliminary 20-day notice (preliminary notice) is required to enforce a mechanic's lien or stop notice claim.  (§ 3097, subds. (a)-(b) [a preliminary notice is 'a necessary prerequisite to the validity of any claim of lien'].)  A preliminary notice must be served within 20 days after the claimant has begun providing labor, services, equipment, or material for which a mechanic's lien or stop notice claim will be made. (§ 3097, subd. (d).)  The Legislature imposed the notice requirement to alert property owners and lenders 'to the fact that the property or funds involved might be subject to claims arising from contracts to which they were not parties and would otherwise have no knowledge.' " (*Brewer Corporation v. Point Center Financial, Inc.* (2014) 223 Cal.App.4th 831, 847.)

In October 2008, Bank assigned its beneficial interest in the deed of trust to Ursus, its wholly owned subsidiary. Ursus foreclosed on the deed of trust and took title to the project that same month.

In December 2008, the court ordered City-Wide's case consolidated with other actions against G Companies and Murrieta L.P. Thereafter, Ursus was substituted as the real party in interest for Bank.

In November 2010, City-Wide amended its complaint to designate Bank and Ursus as Doe defendants. Bank and Ursus each demurred to the complaint on grounds, among others, it was barred by the 90-day statute of limitations of section 3144 because City-Wide had actual notice that Bank was the construction lender on the project at the time it filed the complaint. They argued City-Wide's actual knowledge required it to name Bank in the original complaint, and not as a Doe defendant. The court overruled the demurrer as to the second and third causes of action against Ursus and sustained without leave to amend the demurrer as to Bank.

The case proceeded to a bench trial on City-Wide's causes of action against Ursus to enforce its mechanics' liens. Thereafter, the trial court entered judgment against Ursus on City-Wide's two mechanics' liens in the amount of $246,023.26. In its statement of decision, the court found: "[N]either of [City-Wide's] mechanic's liens was recorded prematurely. Under Civil Code section 3116, they must have been recorded after [City-Wide] pulled off the job ('ceased furnishing labor, services, equipment, or material') and before 90 days after completion of the work of improvement. The evidence at trial showed that both of [City-Wide's] liens (Exhibit [Nos.] 107 and 108) were recorded after

4

it ceased doing work on the job under its subcontract with G Companies, and, whenever the job was actually completed by the replacement contractor, well before 90 days thereafter.

"Second, another subcontractor, RC Grading, commenced work on this job in January of 2006, before the construction deed of trust was recorded in February[] 2006, and the commencement of work by one subcontractor triggers the priority of any liens of subsequent trades, even those who began work after that deed of trust was recorded. See *Westfour Corporation v. California First Bank* (1992) 3 Cal.App.4th 1554, 1562-[156]3 [(*Westfour*)], and Civil Code section 3106. Since the evidence showed the work of improvement began before the [trust deed] was recorded, [City Wide's] mechanic's liens have priority under this theory as well. Civil Code section 3134; *Coast Central Credit Union v. Superior Court* (1989) 209 Cal.App.3d 703, 712.

"Thus [City-Wide] timely foreclosed on its mechanic's liens for $149,917.31 and $96,106.07. Its complaint here was timely filed and names the proper parties. Mr. Stover testified that [City-Wide] knew when it filed that complaint that dismissed codefendant Bank . . . was the construction lender, but [City-Wide] did not need to name Bank in its foreclosure action. See *Westfour*[,] at p. 1560. As far as defendant Ursus is concerned, [City-Wide] had no cause of action against it until it was properly added as a Doe defendant."

The court ordered that judgment be entered foreclosing City-Wide's two mechanics' liens against Ursus in the total amount of $246,023.26, and ruled those liens had priority over Ursus's deed of trust. Thereafter, the court ordered City-Wide to

5

recover $1,657.18 in costs from Ursus. Ursus appeals from the February 7, 2012 judgment.

## DISCUSSION

### I. *Standard of Review*

The parties dispute the applicable standard of review. Ursus contends an independent review standard applies: that this court should review as a question of law the trial court's application of law to undisputed facts, namely, that City-Wide knew Bank was the construction lender on the project well before it filed its complaint, but did not name Bank as a defendant within 90 days of recording its mechanics' liens. City-Wide contends Ursus's challenge is governed by the substantial evidence standard of review, as the trial court made findings of fact on conflicting evidence. It maintains substantial evidence supports the court's conclusion that it timely filed its complaint and properly substituted Ursus and Bank as Doe defendants.

The court's statement of decision contains both findings of fact and conclusions of law. We review the court's findings of fact for substantial evidence. (*Westfour*, *supra*, 3 Cal.App.4th at p. 1558.) Under that standard, our review begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, to support the findings below. (See *Morgan v. Imperial Irrigation District* (2014) 223 Cal.App.4th 892, 916; see also *Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429.) In assessing whether any substantial evidence exists, we view the record in the light most favorable to City-Wide, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*Crawford v. Southern*

6

*Pacific Co.*, at p. 429.)  It is not our role to reweigh the evidence, redetermine the credibility of the witnesses, or resolve conflicts in the testimony, and we will not disturb the judgment if there is evidence to support it.  (*Morgan v. Imperial Irrigation District*, at p. 916; *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1502; *In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

Where the court used findings of fact in drawing conclusions of law, we independently review the conclusions of law.  (*Westfour*, *supra*, 3 Cal.App.4th at p. 1558; *M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1519.)

## II.  *Legal Principles*

"Our state Constitution guarantees that 'laborers of every class[ ] shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens.'  (Cal. Const., art. XIV, § 3.) ' "The mechanic's lien is the only creditors' remedy stemming from constitutional command and our courts 'have uniformly classified the mechanics' lien laws as remedial legislation, to be liberally construed for the protection of laborers and materialmen.' " ' " (*Betancourt v. Storke Housing Investors* (2003) 31 Cal.4th 1157, 1166.)  " '[S]tate policy strongly supports the preservation of laws which give the laborer and materialman security for their claims.' "  (*Wm. R. Clarke Corp. v. Safeco Inc. Co.* (1997) 15 Cal.4th 882, 889.)

A mechanics' lien may be filed if a claimant has provided labor or furnished materials for the property and has not been paid.  (*Brewer Corporation v. Point Center*

7

*Financial, Inc.*, *supra*, 223 Cal.App.4th at p. 839; *Grinnell Fire Protection Systems Co. v. American Sav. & Loan Assn.* (1986) 183 Cal.App.3d 352, 355 (*Grinnell*).)  The materialman must record its claim of lien within 90 days of completing the improvement (§ 3116), and, as long as the materialman has complied with the preliminary notice requirements (§§ 3097, 3114), once recorded, the mechanics' lien constitutes a direct lien on the improvement and the real property (§§ 3128, 3129).  (*Grinnell*, at p. 355.)  "The lien takes priority over all encumbrances recorded after the improvement work commences.  (§ 3134)."  (*Grinnell*, at p. 355.)

Section 3144[4] of the mechanics' lien laws gives a contractor or other claimant 90 days after recording its mechanics' lien to bring a lien foreclosure action against a defendant; the claimant will be barred from bringing such an action against any defendant not designated as a defendant in the action.  (See *Grinnell*, *supra*, 183 Cal.App.3d at p. 355.)  The complaint must name "all persons with an interest in the subject real property at the time suit is brought" within the 90-day limitations period.  (*Monterey S.P. Partnership v. W.L. Bangham, Inc.* (1989) 49 Cal.3d 454, 459.)  Where the claimant does

---

4       Section 3144 provides:  "(a) No lien provided for in this chapter binds any property for a longer period of time than 90 days after the recording of the claim of lien, unless within that time an action to foreclose the lien is commenced in a proper court, except that, if credit is given and notice of the fact and terms of such credit is recorded in the office of the county recorder subsequent to the recording of such claim of lien and prior to the expiration of such 90-day period, then such lien continues in force until 90 days after the expiration of such credit, but in no case longer than one year from the time of completion of the work of improvement.  [¶]  (b)  If the claimant fails to commence an action to foreclose the lien within the time limitation provided in this section, the lien automatically shall be null and void and of no further force and effect."

not have actual knowledge of another party's interest in the property, the claimant may use the procedure in Code of Civil Procedure section 474 to toll the statute as to an unknown defendant by naming Doe defendants in its complaint and then amending the complaint to replace a Doe defendant with the newly-identified defendant. (*Westfour*, *supra*, 3 Cal.App.4th at p. 1558; *Grinnell*, at pp. 358-359.)

Thus, in *Grinnell*, *supra*, 183 Cal.App.3d 352, the general contractor of a project, Grinnell, recorded a mechanics' lien in August 1981, several months after a savings and loan (American Savings, formerly State Savings) had recorded a deed of trust on the property. (*Id*. at p. 354.) Grinnell moved to foreclose its mechanics' lien in November 1981, naming certain persons and entities as well as Doe defendants, but not State Savings. (*Ibid*.) In October 1982, Grinnell "gained actual knowledge of State Savings' interest in the [subject] property," and substituted it as Doe 2 in the complaint. (*Ibid*.) State Savings moved for summary judgment on grounds Grinnell had not named it within 90 days of filing its mechanics' lien as required by section 3144. (*Id*. at pp. 354-355.)

Reviewing case law and law review articles, the *Grinnell* court held it was "proper to permit the use of Doe pleadings in a [mechanics' lien] foreclosure action where the materialman does not have actual, as opposed to legal, knowledge of the identity or existence of subsequent encumbrancers" and otherwise satisfies all of the requirements of Code of Civil Procedure section 474. (*Grinnell*, *supra*, 183 Cal.App.3d at p. 360, see also p. 354 ["If the materialman does not have actual knowledge of a junior lienor's interest in the property, the materialman can . . . satisfy the requirements of section 3144 by naming the junior lienor as a Doe defendant."].) The court observed further that

9

section 3084 and other provisions of the mechanics' lien law suggest the Legislature did not intend to impose on the lien claimant the burden and expense of conducting a title search on the property against which the lien is filed; that the Legislature "recognized that the lien claimant might not have complete and accurate information on the ownership of the property in question, and this recognition makes it improbable that the Legislature expected the materialman to conduct a complete and accurate title search to ascertain who owns the property." (*Id*. at p. 361.) Emphasizing the fictitious name statute should be liberally construed to protect the materialman's rights (*id*. at p. 362), the court held Grinnell's action could not be defeated because it had constructive knowledge of State Savings' identity. (*Id*. at pp. 362-363.)

In *Sobeck and Associates, Inc. v. B & R Investments No. 24* (1989) 215 Cal.App.3d 861, the appellate court relied on *Grinnell* to conclude that in meeting the 90-day period for commencing a mechanics' lien foreclosure action, plaintiffs in a mechanics' lien foreclosure action could rely on the fictitious names statute to join as yet unidentified defendants. (*Sobeck*, at p. 867.) It pointed out a plaintiff may use the fictitious names procedure "whenever he has no actual knowledge of the defendant; constructive or legal knowledge will not deprive the plaintiff of the remedy." (*Sobeck*, at p. 867, citing *Grinnell*, *supra*, 183 Cal.App.3d at pp. 359-360, 362-363.) In *Sobeck*, the plaintiff general contractor, Sobeck, Inc., recorded its mechanics' lien one month after the construction lender recorded its deed of trust, and Sobeck Inc. filed suit to foreclose on the lien two days after recording its lien, naming the owner and Doe defendants. (*Sobeck*, at p. 864.) It was not until April 1986 that Sobeck Inc. "learned that [the lender] had an

10

interest in the property where the motel was to be built." (*Ibid*.) One year later it filed an amendment to substitute the lender in place of a Doe defendant. (*Id*. at p. 865.)

The appellate court rejected the defendant's argument that Sobeck, Inc.'s complaint was untimely because it had constructive or legal knowledge of the bank's claim; the court observed it was "undisputed that [the plaintiff] Sobeck, Inc. was unaware of the Bank's identity until April 1986, long after Sobeck, Inc. had filed its complaint." (*Sobeck and Associates, Inc. v. B & R Investments No. 24*, *supra*, 215 Cal.App.3d at p. 867.) The court further held that Sobeck, Inc.'s one-year delay in filing its amendment did not render the complaint untimely as a matter of law. (*Id.* at pp. 869-870.) Rather, it concluded "a plaintiff in an action to foreclose a mechanics' lien need not amend the complaint to substitute a fictitiously named defendant within 90 days of obtaining knowledge of the defendant. The amendment will relate back if made within three years of filing the original complaint, unless there is evidence of unreasonable delay by the plaintiff or specific prejudice to the defendant." (*Id*. at p. 870.) The court remanded the matter to the trial court to consider evidence of unreasonable delay and prejudice to the defendant from Sobeck, Inc.'s delay in filing its amendment. (*Id*. at pp. 870-871.)

In *Westfour*, *supra*, 3 Cal.App.4th 1554, the trial court made a specific factual finding about the plaintiff Westfour's knowledge, finding " 'at the time the Complaint was filed . . . Westfour had actual knowledge of the identity of the Bank and its probable position as the construction lender' " but it " '[did] not find that Westfour had actual knowledge of the Bank Deed of Trust against the Property.' " (*Westfour*, *supra*, 3 Cal.App.4th at p. 1559, italics omitted.) Nevertheless, the trial court, purporting to rely

11

on *Grinnell*, *supra*, 183 Cal.App.3d 352, ruled the complaint was untimely given the plaintiff's knowledge of the Bank's identity. (*Ibid*.) The appellate court reversed, pointing out the trial court had misread *Grinnell*. (*Id*. at pp. 1559-1560, 1563.) It observed that the proper focus in determining whether the bank was properly substituted for a Doe defendant was not Westfour's knowledge of the bank's *identity*, but whether Westfour had actual knowledge of the bank's *interest in the property*. (*Id*. at p. 1559.) The court pointed out that under authorities applying the fictitious name statute, "[a] plaintiff is ' "ignorant of the name" ' of a defendant . . . not only when he is ignorant of the defendant's identity, but also when he knows the defendant's identity but is ignorant of facts giving rise to a cause of action against that defendant. [Citations.] Even where a plaintiff could have discovered such facts, he or she is still entitled to the benefit of the fictitious name statute." (*Westfour*, at pp. 1559-1560.)

The evidence in *Westfour* showed that the plaintiff was unsure whether the bank held a deed of trust on the property because of discussions regarding refinancing, and that the plaintiff did not gain actual knowledge of the bank's deed of trust until it obtained a litigation guarantee subsequent to filing the complaint. (*Westfour*, *supra*, 3 Cal.App.4th at p. 1560.) Despite contrary evidence, the trial court's finding was supported by substantial evidence, and thus the appellate court was required to accept it. (*Ibid*.) The appellate court concluded that "[s]ince Westfour did not have actual knowledge of [the bank's] interest in the Property—namely, its status as a beneficiary of a deed of trust on

12

the Property—at the time it filed its complaint, it satisfied the 90-day statute of limitations by designating [the bank] as a Doe defendant." (*Ibid.*)[5]

### III. *Contentions*

Ursus contends the court erred by failing to apply section 3144 to find City-Wide's mechanics' lien claims time-barred. It points out there is no dispute City-Wide had actual knowledge that Bank was the construction lender on the project before it filed its complaint, and maintains City-Wide's knowledge "constitutes knowledge that [Bank] had an interest in the subject Property." Ursus reasons that under section 3087[6] of the mechanics' lien laws, a "construction lender" means any mortgagee or beneficiary under a deed of trust. Thus, Ursus argues, City-Wide's attempt to substitute Bank as a Doe defendant does not save the mechanics' lien claims because the relation-back doctrine does not apply. Ursus further contends *Westfour*, *supra*, 3 Cal.App.3d 1554 is factually distinguishable in that there is no evidence City-Wide was "unsure" of whether Bank was the construction lender on the project, and City-Wide did not present any evidence—or

[5]     The *Westfour* court went on to hold that Westfour was not required to serve a preliminary 20-day notice on the bank because Westfour had contracted directly with the property owner as defined by section 3097, subdivision (a), and Westfour was the contractor as described in section 3097, subdivision (b). (*Westfour*, *supra*, 3 Cal.App.4th at pp. 1561-1562.)

[6]     Section 3087 provides: " 'Construction lender' means any mortgagee or beneficiary under a deed of trust lending funds with which the cost of the work of improvement is, wholly or in part, to be defrayed, or any assignee or successor in interest of either, or any escrow holder or other party holding any funds furnished or to be furnished by the owner or lender or any other person as a fund from which to pay construction costs." (See also Cal. Law Revision Com. com., 12B West's Ann. Civ. Code (2012 ed.) foll. § 8006, p. 377 ["Section 8006 restates former Section 3087 without substantive change."].)

13

argue in the trial court—that it lacked actual knowledge of Bank's interest in the subject property.

City-Wide responds that it was not actually aware of Bank's interest in the property when it originally filed its foreclosure action and was unaware of the facts giving rise to a cause of action against Bank. Specifically, City-Wide argues its knowledge that Bank could be bound by its mechanics' lien did not arise until it discovered that RC Grading had commenced work before Bank recorded its construction deed on February 22, 2006, giving its mechanics' liens priority. According to City-Wide, it was not aware that RC Grading was the grading subcontractor, it was not aware when RC Grading started work, it did not know when the construction deed of trust was recorded, and it was not aware that RC Grading had commenced work before the construction deed was recorded. As a consequence, City-Wide argues, under section 3134, Bank's construction deed was subordinate to the mechanics' lien, and City-Wide had no actual knowledge that section 3134 would apply because it did not know when the work of improvement commenced or when the construction deed was recorded. City-Wide further maintains it was Ursus's burden at trial to show City-Wide knew both Bank's identity as well as the facts giving rise to Bank's liability.

IV. *Analysis*

In resolving these issues, we start with several important points. First, City-Wide is correct that it was Ursus's burden at trial to prove all of the facts essential to benefit from section 3144's statute of limitations. (Evid. Code, § 500; *Samuels v. Mix* (1999) 22 Cal.4th 1, 10; *Ladd v. Warner Bros. Entertainment, Inc.* (2010) 184 Cal.App.4th 1298,

14

1309, 1310.)[7]  Thus, contrary to Ursus's arguments suggesting otherwise, it is irrelevant whether City-Wide presented evidence concerning its knowledge of Bank's interest in the property or lack thereof.  (See *Consumer Cause, Inc. v. SmileCare*, *supra*, 91 Cal.App.4th at p. 468, disagreed with on other grounds in *San Diego Watercrafts, Inc. v. Wells Fargo Bank, N.A.* (2002) 102 Cal.App.4th 308, 315.)  The statute of limitations question turns on whether City-Wide is entitled to the benefit of the fictitious name statute, namely, whether City-Wide knew of facts giving rise to a cause of action against Bank even though it knew Bank was the construction lender on the project at the time it filed its complaint.  (*Grinnell*, *supra*, 183 Cal.App.3d at pp. 354, 360-362; *Westfour*, *supra*, 3 Cal.App.4th at pp. 1559-1560.)

Second, the record flatly contradicts Ursus's assertion that City-Wide is raising its "broken priority" argument for the first time on appeal and that the trial court never considered the issue.  Before trial began, City-Wide's counsel stated:  "Our position, your Honor, is that we timely brought the lender into the case under the Doe amendment

---

7    There is authority stating that the so-called "discovery rule" is an exception to this requirement, and the burden of pleading and proving belated discovery of a cause of action falls on the plaintiff.  (*Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1533, citing *Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437.)  But this case does not present a situation for application of the delayed discovery rule, which postpones accrual of a cause of action and hence the running of the limitations period until a plaintiff discovers one or more elements of a cause of action, namely, the wrongdoing, causation and harm.  (See *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.)  Rather, the question on which Ursus bore the burden of proof was the propriety of City-Wide's Doe amendment, and that involves proving whether City-Wide had actual knowledge of Bank's interest in the property at the time it filed its complaint.  Thus, if Ursus did not make its showing as to even one element of this aspect of its affirmative defense, it cannot prevail even if City-Wide produced no evidence at all.  (See *Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 468.)

because we were unaware of the facts giving rise to our position against the lender. Here is the subtle nuance. The Doe amendment under [Code of Civil Procedure section] 474 has two elements. Element one is if you don't know the identity, then you can bring them in at a later date . . . . [¶] The other element, the 'or' is facts giving rise to the cause of action against the defendant. The nuance here is, I agree with [Ursus's counsel] that we should have brought in any junior lienholders at the time of the inception of the case within 90 days, but remember the lender was not a junior lienholder at the time we filed. They're a senior lienholder. We did not know there was a break in priority factually at the time we filed the complaint. We timely Doe'd in the lender once we learned through discovery that there was a break in priority giving us a superior position to the lender in my legal opinion. So that's where we sit here today." The court heard from Ursus's counsel, and explained that Ursus had the burden of proof on its affirmative defense. Counsel for Ursus acknowledged she understood it was Ursus's burden. City-Wide's counsel thereafter explained in his opening statement that City-Wide would be presenting evidence that Bank did not record its construction deed of trust until after the grading work began on the property. The trial court expressly addressed the broken priority issue when it ruled that RC Grading's commencement of work in January 2006, which was before Bank recorded its construction deed of trust, triggered the priority of City-Wide's mechanics' lien.

Accordingly, the question at hand is whether the trial court properly ruled Ursus did not meet its trial burden to prove section 3144's statute of limitations bars City-Wide's action. We review the court's rulings and not its reasoning; we will uphold its ruling if

16

right upon any theory of the law applicable to the case, regardless of the considerations that may have moved the court to its conclusion. (See *Coral Constr., Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336; *North American Capacity Ins. Co. v. Claremont Liability Ins. Co.* (2009) 177 Cal.App.4th 272, 296.) Under the authorities discussed above, Ursus was required to present evidence that City-Wide possessed actual knowledge that Bank had an interest in the property–a recorded deed of trust—and Bank should have been added as a defendant as a junior lienholder. On this point, Ursus characterizes City-Wide's concession as an admission "that [City-Wide] knew [Bank] was the construction lender *with an interest* in the Subject Property at the time it filed its complaint." (Italics added.) But Ursus points only to evidence that various City-Wide personnel, based on documentation given to them by G Companies, knew at the time City-Wide filed its preliminary 20-day notice, of Bank's reputed status as the construction lender, nothing more.[8] As *Westfour* makes clear, it is not enough that City-Wide knew Bank was the construction lender, it was required to have "actual knowledge of [Bank's] interest in the Property—*namely, its status as the beneficiary of a deed of trust on the*

---

[8] Ursus does not cite any trial evidence suggesting that City-Wide knew Bank was the beneficiary of a deed of trust on the property. Indeed, the record contains evidence to the contrary: City-Wide presented testimony from its employee Dawn Gandy, who was responsible for contracts, preliminary notices and accounts receivable, among other things, that she was never provided with the construction deed of trust with respect to the project and never learned that RC Grading was working on the same project. On cross-examination, Gandy testified she did not typically review a construction deed of trust in preparing City-Wide's preliminary notice, she just took the information off of papers provided by the general contractor on the project. City-Wide's president, Denny Stover, testified that he was at no time aware that RC Grading was the grading subcontractor, and before the initiation of the litigation did not know when RC Grading started work, or that it had ever worked, on the project.

17

*Property*—at the time it filed its complaint . . . ." (*Westfour*, *supra*, 3 Cal.App.4th at p. 1560.) Furthermore, City-Wide points out the evidence demonstrated not only that City-Wide was unaware Bank was the beneficiary of a deed of trust, but it was also unaware of Bank's status as a junior lienholder, i.e., Bank's construction deed was recorded after RC Grading had commenced work on the project, rendering it subordinate to City-Wide's mechanics lien. (§ 3134; *Grinnell*, *supra*, 183 Cal.App.3d at p. 355.) Consequently, when it filed its complaint, City-Wide did not know its mechanics' liens related back to January 2006, giving them priority over Bank's later-recorded deed of trust, which would have required it to add Bank as a defendant. The court's implied finding on this point is supported by substantial evidence from Gandy and Stover. (See footnote 8, *ante*.)

Ursus's point in fact is that City-Wide had *legal* or *constructive* knowledge of Bank's deed of trust. It argues, "As a matter of law under the mechanic's lien statutes, a 'construction lender' means a 'mortgagee or beneficiary under a deed of trust' loaning money to fund a work of improvement." It maintains "City-Wide's knowledge that [Bank] was the construction lender constitutes knowledge [Bank] had an interest in the subject Property." But constructive or legal knowledge of Bank's interest is not enough to invalidate City-Wide's Doe amendment. (*Grinnell*, *supra*, 183 Cal.App.3d at pp. 362-363; *Sobeck and Associates, Inc. v. B & R Investments No. 24*, *supra*, 215 Cal.App.3d at p. 867.)

Ursus's effort to distinguish *Westfour* is unavailing. It argues that unlike in *Westfour*, there was no evidence City-Wide was "unsure" whether Bank was the construction lender for the project. However, the relevant inquiry under *Westfour*—and

18

*Grinnell*, *supra*, 183 Cal.App.3d at page 354—is whether the mechanics' lien claimant has actual knowledge of the construction lender's ownership interest, its *interest as the beneficiary of the deed of trust on the property*, not merely its status as a construction lender. (*Westfour*, *supra*, 3 Cal.App.4th at p. 1560.) Here, Ursus presented no such evidence concerning City-Wide's knowledge of that particular fact; the fact City-Wide served a preliminary notice identifying Bank as the construction lender does not suffice. Ursus further argues that in *Westfour*, it was undisputed the plaintiff had not served the lender with a preliminary notice, and the evidence shows City-Wide did serve Bank with a preliminary notice. But in *Westfour*, the fact Westfour had not served a preliminary notice was not pertinent to the appellate court's conclusion as to the statute of limitations; the appellate court held, in connection with an alternate argument, that there was substantial evidence showing Westfour was a general contractor under direct contract with the owner and consequently did not need to serve a preliminary notice, the absence of which would otherwise have been fatal to enforcement of its mechanics' lien. Finally, Ursus argues that unlike in *Westfour*, "City-Wide did not present any evidence that it did not gain actual knowledge of [Bank's] interest in the subject Property as the construction lender until after the filing of the Complaint . . . ." But as we have stated, because Ursus held the burden of proof on its affirmative defense, City-Wide was not required to present evidence it lacked such knowledge.

Having presented only evidence that City-Wide knew of Bank's status as a construction lender, Ursus has not shown the trial court erred by concluding City-Wide timely filed its complaint to foreclose its mechanics' liens, via properly adding Bank and

19

Ursus as Doe defendants.  Very simply, Ursus did not meet its burden at trial to prove City-Wide was not entitled to the benefit of the fictitious name statute, or that the statute of limitations barred its action.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.